UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAMELA J. SHEPARD,

                        Plaintiff,

    -against-                                                                                             5:11-CV-0211 (LEK)

MICHAEL J. ASTRUE, Commissioner
Social Security Administration

                        Defendant.

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Pamela J. Shepard ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the final decision of the Commissioner of Social Security ("Commissioner") that Plaintiff is ineligible for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income Benefits ("SSI").[1] Plaintiff argues that the decision of Administrative Law Judge ("ALJ") Thomas P. Tielens was against the weight of the substantial evidence and violates the Social Security Act. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and asserts that the ALJ's decision is supported by substantial evidence and was made in accordance with applicable law.[2]

For the following reasons, this matter is affirmed in part and remanded in part for proper consideration of Plaintiff's Residual Functional Capacity ("RFC") and reassessment of Plaintiff's credibility.

---

[1] By order dated February 15, 2012, the Honorable Gary L. Sharpe, Chief U.S. District Judge, terminated this case's referral to the Honorable David R. Homer, U.S. Magistrate Judge, and directed the Court to decide it without a report-recommendation. Dkt. No. 19.

[2] See N.D.N.Y. Gen. Order 18 at 2.

**II. BACKGROUND**

**A. Procedural History**

On November 29, 2006, Plaintiff protectively filed a Title II application for DIB and concurrently filed a Title XVI application for SSI. Dkt. No. 8-2 at 19.[3] Her applications were denied on June 8, 2007. Dkt. No. 8-4 at 2. Plaintiff requested a hearing, which was held on September 3, 2009, before the ALJ. Dkt. No. 18 ("Defendant's Brief") at 2. In his decision dated October 14, 2009, the ALJ found that Plaintiff was not disabled under §§ 216(i), 216(d), and 1614(a)(3)(A) of the Social Security Act. Dkt. No. 8-2 at 28. Plaintiff's timely request for review of the ALJ's decision was denied by the Social Security Appeals Council ("Appeals Council") on January 7, 2011, at which time the ALJ's decision became the final determination of the Commissioner. Dkt. No. 8-2 at 2. On February 23, 2011, Plaintiff filed the present action. Dkt. No. 1 ("Complaint") at 4.

**B. Substantive Background**

Plaintiff was born on April 30, 1961. Dkt. No. 12 ("Plaintiff's Brief") at 8. After graduating from high school, she received two associate's degrees and a welder's certification. Id. Plaintiff has worked as a packer on an assembly line and a machine operator. Dkt. No. 8-6 at 19. She testified that her job as a packer was "fast paced" and required her to stand in order to perform her duties. Dkt. No. 8-2 at 47-48. She further testified that her duties as a machine operator required her to lift 50 pounds or more and be on her feet, and that knee and back problems caused her to leave that job in January 2003. Id. at 48-49.

---

[3] In referring to specific pages in Docket Number 8 and its Exhibits, the Court uses the numbers electronically added to the top of each page by the Clerk of the Court, not the numbers on the bottom of each page.

Plaintiff alleges that she has been disabled since September 1, 2006, due to a number of impairments including knee and back pain, drug abuse and alcoholism, morbid obesity, and various psychological disorders. Def.'s Br. at 5. A 2003 motor vehicle accident caused Plaintiff substantial injuries for which she underwent several right-heel surgeries in 2003 and 2005. Dkt. No. 8-2 at 66; Pl.'s Br. at 9-10. Plaintiff also had prior surgeries on her hand, knee, and both feet. Pl.'s Br. at 10. Furthermore, Plaintiff has been hospitalized for acute psychosis and has a history of asthma, anxiety, and panic attacks. Id. at 4. Plaintiff testified that she received mental-health counseling for a brief period when she was a teenager and that, beginning in 2003, she has received further counseling once a week or more frequently if needed. Dkt. No. 8-2 at 53. Plaintiff allegedly has a history of drug and alcohol abuse, and Plaintiff testified that she had used cocaine for "32 or 34 years," but had been "clean and sober" since May 13, 2005. Id. at 45, 50.

Moreover, Plaintiff testified about her Obsessive-Compulsive Disorder. Id. at 58-59. She engages in "checking" behaviors and other repetitive activities such as hand washing, checking to make sure that the stove is off, and checking if the refrigerator door is closed, over and over again. Id. Plaintiff reported having hallucinations during which she hears "unexplained" sounds and sees "the bad man." Id. at 59.

Plaintiff attributes her ability to successfully obtain a two-year degree in chemical dependency counseling with a 3.79 grade-point average to her anxiety medication and the breaks between classes, during which she did not have to be on her feet or in a chair that hurt her back. Id. at 63. In order to obtain her degree, Plaintiff worked approximately 24 hours per week, interned, performed research, and wrote papers. Id. at 64-65.

Plaintiff briefly worked at Burger King before quitting due to alleged back and knee pain.

3

Dkt. No. 8-6 at 66. She then worked for Kelly Services Marietta Corporation as a packer, where she "couldn't tolerate standing" and was consequently terminated in July 2003. Id. She has not worked since. Id.

### C. The ALJ's Decision

Plaintiff's hearing was held in September 2009. Def.'s Br. at 2. The ALJ made the following findings and conclusions, as set forth in his October 14, 2009 decision.

First, the ALJ held that Plaintiff met the insured-status requirement of the Social Security Act through September 30, 2008. Dkt. No. 8-2 at 21. In addition, he held that Plaintiff has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date of her disability. Id. Moreover, the ALJ found that Plaintiff had the following "severe" impairments: mild asthma, knee pain, foot surgeries, morbid obesity and related back pain, as well as depressive affective disorder, obsessive-compulsive disorder, personality disorder not otherwise specified, and a history of drug addiction, alcoholism, or other substance-abuse disorders. Id.

Furthermore, the ALJ held that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment. Id. at 23. The ALJ also determined that Plaintiff had the RFC to perform light (or sedentary) work, standing not more than approximately two hours per workday, with the mental capacity to meet the demands of simple, repetitive, entry-level work, and the ability to understand and follow simple directions, perform simple tasks, maintain a routine and schedule, to at least occasionally relate to and interact appropriately with others, and to deal with work related stress. Id. at 24. The ALJ further held that Plaintiff may have been unable to perform past relevant work. Id. at 27. He determined that, as of the alleged onset date, Plaintiff was 45 years old and therefore a "younger person" as defined in 20

CFR § 416.963(c). Id. at 27. Next, the ALJ determined that Plaintiff had at least a high school diploma and could communicate in English. Id. The ALJ then held that, whether or not she had transferable job skills, Plaintiff was not disabled based on the Medical-Vocational Rules. Id. Finally, the ALJ held that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 28.

### D. The Parties' Briefs

Both parties have filed Briefs. In her Brief, Plaintiff argues that: (1) the Commissioner failed to properly evaluate the evidence; (2) the determined RFC was in error and not based on substantial evidence in the record; (3) the Commissioner failed to meet his burden because no vocational evidence or testimony were presented; and (4) the credibility determination was in error. See generally Pl.'s Br. Defendant contends that: (1) the ALJ's RFC finding is supported by substantial evidence; (2) the ALJ appropriately assessed Plaintiff's credibility; (3) the ALJ correctly determined that Plaintiff could perform work in the national economy; and (4) the Commissioner's decision should therefore be affirmed. See generally Def.'s Br.

## III. LEGAL STANDARD

### A. Jurisdiction and Scope of Review

Plaintiff resides in Cortland, New York, which sits in the judicial district in which the claim is brought. Compl. at 2. District courts have jurisdiction to hear claims based on denial of Social Security benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). A claimant may request review of the ALJ's decision by the Appeals Council, but "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review"; thus, upon dismissal, the decision of the ALJ becomes the Commissioner's final decision. 20 C.F.R. §§ 404.972, 404.967. Furthermore, "[t]he

Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless [an action is filed] in Federal district court, or the decision is revised." Id. § 404.981. Therefore, once the Appeals Council has acted the case is ripe for judicial review. See id.

In reviewing the Commissioner's decision regarding eligibility to receive Social Security benefits, a court must determine whether the Commissioner's findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Featherly v. Astrue, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co., 305 U.S. at 229); accord Featherly, 793 F. Supp. 2d at 630.

A reviewing court may not affirm the Commissioner's decision if it reasonably doubts that the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986. The Commissioner's decision must be upheld if the evidence is deemed to be susceptible to more than one rational interpretation, and if supported by substantial evidence, must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Moreover, a court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.

See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir 1990). A court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Disability Benefits**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Moreover, a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 1382c(a)(3)(B).

To determine whether a claimant has a disability, the Commissioner applies a five-step process. See 20 C.F.R. §§ 404.1520, 416.920. Moreover, "[i]f at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The five-step process is as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age,

7

education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996) (citations omitted). A claimant bears the burden of proof with regard to the first four steps, and, if the claimant satisfies this burden, the burden shifts to the Commissioner with regard to the fifth step to prove that there is other work that the claimant could perform. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

## IV. DISCUSSION

### A. The ALJ's Analysis

At step one of the five-step process, the ALJ found that Plaintiff "had not engaged in substantial gainful activity since . . . the alleged onset date." Dkt. No. 8-2 at 21. At step two, the ALJ found that while some of Plaintiff's medical issues did not rise to the level of "severe," Plaintiff did have severe impairments, specifically a "past history of mild asthma; history of knee pain; status-post right foot fusion surgeries; and morbid obesity with some related back pain; along with depressive affective disorder: obsessive-compulsive disorder (OCD); personality disorder NOS; and history of DA&A (drug addiction and/or alcoholism and/or related substance abuse disorders)." Id.

At step three, however, the ALJ held that none of the above impairments or combinations of impairments "meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Dkt. No. 8-2 at 23. The ALJ held at step four that Plaintiff was unable to perform past

8

relevant work because her previous employment might call for more lifting and standing than she was able to perform. Id. at 27.

Finally, at the fifth step, the ALJ held that, subject to the limitation of standing not more than two hours per workday, "the claimant has the residual functional capacity to perform light (or sedentary) work as defined in 20 C.F.R. 404.1567(b) and 416.067(b)." Dkt. No. 8-2 at 24. In addition, Plaintiff is "able to meet the basic rudimentary demands of simple, repetitive, entry-level work" and is "able to understand and follow simple instructions and directions; perform simple tasks; . . . maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others . . . and . . . to deal with work-related stress." Id. "Considering the claimant's age, education, work experience, and residual functional capacity," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 28. The ALJ ultimately found that "the claimant has not been under a disability within the meaning of the Social Security Act from September 1, 2006 through the date of this decision." Id. at 19.

**B. Plaintiff's Claims**

*1. Evaluation of Evidence*

Plaintiff alleges that "[t]he ALJ must explain in his decision the weight given to medical providers, treating and nontreating physicians, and nonexamining sources." Pl.'s Br. at 20. "[T]he discussion as to the weight given," Plaintiff argues, "allows a subsequent reviewer to follow the ALJ's reasoning." Id. at 21. Plaintiff also asserts that a treating physician's medical opinion must be given "controlling weight" when it is supported by the substantial evidence. Id. This is known as the "Treating Physician Rule," which "mandates that the medical opinion of a claimant's treating

9

physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000). She further contends that a physician's opinion, even when not controlling, may be entitled to significant weight based on the familiarity of the treating source with the claimant's medical conditions. Id. Finally, Plaintiff argues that the ALJ must explain the reasoning behind the weight given to a treating physician's opinion and that failure to do so is grounds for remand. Id. at 22.

Defendant contends that the ALJ properly cited the opinion of a consultative examiner and that such an opinion can constitute substantial evidence in support of the ALJ's decision. Def.'s Br. at 7. Defendant further asserts that the opinion of a nonexamining source may override the opinion of a treating physician when supported by the evidence in the record, and that the ALJ has the authority to weigh conflicting medical evidence and choose between medical opinions. Id. at 9-10. Defendant argues, in sum, that the ALJ's conclusions regarding the weight given to each source are supported by substantial evidence.

The ALJ found that the case manager's testimony regarding Plaintiff's ability to work and the counseling program's lack of employment-related goals for Plaintiff was contradicted by the agency's apparently sending Plaintiff to college and Plaintiff's participation in a program, the aim of which is to promote workforce re-entry. Dkt. No. 8-2 at 26, 73-75.

Furthermore, the ALJ determined that Dr. Rahner's findings regarding the restrictions on Plaintiff's standing and walking were without evidentiary support and inconsistent with Dr. Ganesh's findings:

> the summary conclusions . . . [of] Dr. Ganesh are consistent with the entire record. . . . The recent assessment from treating source Dr. Rahner is generally consistent with the herein determined capacity, though the drastic restriction on standing/walking is not explained or justified by any supportive clinical recitals, and so is considered conclusory

10

and unpersuasive.

Dkt. No. 8-2 at 26-27. In general, such "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). Thus, the ALJ was within his discretion to make such a determination and sufficiently stated his reasoning for the weight he gave to these opinions.

Regarding the opinions of consulting physician Dr. Shapiro and treating counselor Amy Walton, the ALJ noted that their findings

> are inconsistent with the relatively benign mental status exam results obtained that same day by the examiner; and so are not granted any considerable evidentiary weight herein. . . . Likewise, the statements from treating counselor Amy Walton . . . cannot be granted any significant weight in these deliberations, since they are undermined at the outset by the claimant's very good performance in the school setting to date.

Id. at 27. The ALJ sufficiently explained his reasoning with regard to the weight he gave to the psychiatric evaluations.

Moreover, courts have upheld ALJ determinations according little weight to treating-physician testimony when that testimony is contradicted by evidence of the claimant's success in higher education. See, e.g., Klett v. Barnhart, 303 F. Supp. 2d 477, 484-85 (S.D.N.Y. 2004). In Klett, the court upheld the ALJ's decision not to give controlling weight to a treating physician because the ALJ "determined that 'the treating source's . . . opinion[s are] contradicted by overwhelmingly compelling non-medical evidence,'" referring, in particular, to the plaintiff's "ability to graduate from Wesleyan in four years as an English major with a 3.3 grade point average" during the alleged period of disability. Id. at 483 (alteration in original). Thus, while Plaintiff is correct that school attendance is not conclusive evidence of the ability to engage in substantial gainful activity, scholastic performance may properly be considered when making such a

11

determination.[4] In addition, at no point did the ALJ attempt to assert that Plaintiff's academic success was, itself, a substantial gainful activity; rather, he merely considered this as evidence in support of his determination that Plaintiff was capable of engaging in such activity. See Dkt. No. 8-2 at 25-26. Therefore, the ALJ properly considered Plaintiff's education and academic success in making his decision, and the Court finds that the ALJ sufficiently explained his reasoning behind the weight given to medical providers, treating and nontreating physicians, and nonexamining sources.

## 2. RFC Determination

RFC describes the most work that a claimant can perform despite his or her limitations and is based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). An ALJ "must make his own findings, specifying what functions plaintiff is capable of performing, and not simply make conclusory statements regarding plaintiff's residual functional capacity." Sullivan v. Sec'y of Health & Human Servs., 666 F. Supp. 456, 460 (W.D.N.Y. 1987). An RFC determination must include "substantial evidence of each physical requirement listed in the regulations" and requires that the ALJ "specify the functions plaintiff is capable of performing." LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990); Sullivan, 666 F. Supp at 460.

In this case, the ALJ found that Plaintiff's limitations are consistent with an ability to perform sedentary work, which

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

---

[4] Plaintiff refers the Court to 20 C.F.R. § 404.1572(c), which provides that "[g]enerally, we do not consider activities like . . . school attendance . . . to be substantial gainful activity." Pl.'s Br. at 17. However, this addresses only the issue of school *attendance* and makes no mention of grades or academic achievement.

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "Occasionally" has been defined as "occurring very little to up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. The sedentary level of exertion is said generally to involve periods of standing and walking not more than approximately two hours and sitting not more than six hours in an eight-hour work day. Id. The Court also notes that the ALJ refers to "light (or sedentary) work." See Dkt. No. 8-2 at 24. Defendant's brief, however, asserts that "the Commissioner maintains that Plaintiff can perform a range of sedentary—not light—work." Def.'s Br. at 5 n.4. Plaintiff's ability to perform sedentary work could be established by her ability to perform light work. 20 C.F.R. § 404.1567(b) provides that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." However, to establish Plaintiff's capacity to perform either light or sedentary work, the ALJ must set forth a more detailed analysis. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence.") (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)).

Specifically, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8P, 1996 WL 374184, at *1. Thus, in order to establish that Plaintiff is capable of performing light work, in an effort to establish that Plaintiff is capable of performing sedentary work, the ALJ would have to address, at a minimum, Plaintiff's abilities to lift

13

up to 20 pounds, walk, stand, sit, push, and pull. 20 C.F.R. § 404.1567(b). Beyond Plaintiff's abilities to lift ten pounds and stand for a maximum of two hours per workday, the remaining abilities were not addressed.

In terms of Plaintiff's ability to perform sedentary work, the ALJ found that Plaintiff "could lift/carry [ten] pounds; and certainly her testimony about carrying a back-pack and heavy load of books around the college campus suggests [the] ability to lift considerably more than that." Dkt. No. 8-2 at 25. He also stated that she is able to stand for a total of two hours per workday. Id. at 24. However, the additional exertional requirements of sedentary work are not addressed, and those that are addressed lack a sufficient explanation of the evidentiary basis for the ALJ's findings. For example, the ALJ in no way addressed or explained the evidentiary support for his findings (or lack thereof) regarding Plaintiff's sitting and walking abilities. Thus, the ALJ did not provide a sufficient explanation for his RFC determination, and "failure to explain the evidence relied upon in assessing RFC is grounds for a remand." Compo v. Comm'r of Soc. Sec., No. 05-CV-973, 2009 WL 2226496, at *9 (N.D.N.Y. July 23, 2009) (citation omitted).

Therefore, whether the ALJ was attempting to establish Plaintiff's ability to perform sedentary work by establishing Plaintiff's ability to do light work, or trying to establish Plaintiff's ability to perform sedentary work directly, the ALJ fails to describe, on a function-by-function basis, Plaintiff's capabilities in making his RFC determination. Defendant's Brief states that the record supports the ALJ's RFC finding. Def.'s Br. at 6-7. Defendant describes, in support of this proposition, the detailed findings of Dr. Ganesh, noting "no gross limitations to sitting or using her upper extremities" as well as " mild to moderate limitation to standing, walking and climbing." Id. at 7. These findings may support the ALJ's RFC finding, but the ALJ must specify in his decision

14

the functions Plaintiff is capable of performing. This he did not do. The Court therefore remands on the issue of the determination of Plaintiff's RFC.

### 3. *Requirement of Vocational Evidence or Testimony*

Plaintiff argues that where the combination of a claimant's physical and nonexertional impairments further limits the range of work she can perform, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" Pl.'s Br. at 29 (quoting Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986)). However, the nonexertional impairments must "significantly diminish the ability to perform a full range of work" to require the testimony of a vocational expert. Melchior v. Apfel, 15 F. Supp. 2d 215, 222 (N.D.N.Y. 1998).

"Limitations or restrictions which affect [a claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered non-exertional." 20 C.F.R. § 404.1569a. Thus, Plaintiff's mental impairments are nonexertional. The ALJ considered these limitations and found that "the claimant indeed has some very real mental health issues, but that these vary widely in nature and severity over time, and have a less than drastic overall impact on normative functioning." Dkt. No. 8-2 at 25. The ALJ noted that Plaintiff has, at times, received a high Global Assessment of Functioning score and performed well in school as evidence to support his finding. Id. The ALJ further observed the correlation, acknowledged by Plaintiff, between her mental health and having structure in life, such as that offered by school or a job. Id. The ALJ had substantial evidentiary support in the record to support his determination. Therefore, the ALJ was entitled to rely on the Medical-Vocational guidelines in making his determination, and vocational expert testimony was

properly excluded.

### *4. Credibility Determination*

Plaintiff contends that the ALJ incorrectly determined that Plaintiff's physical impairments primarily concern the ability to climb and descend stairs and were generally "mild," because her physical evaluation indicated "significant exertional limitations due to back and knee pain and the need for breaks/rest." Dkt. No. 8-2 at 33. Plaintiff further asserts that the ALJ's opinion that Plaintiff's mental limitations "have less than a drastic overall impact on normative functioning" is "neither the standard, nor based on the substantial evidence." Id. at 34. Plaintiff alleges that her "description of the nature and intensity of her symptoms are credible and supported by consistent treating and reviewing medical and non-medical sources and consultative medical examinations." Id. Plaintiff therefore contends that "[t]he Commissioner's decision is not supported by the substantial medical and other evidence." Id.

Defendant contends that "the ALJ appropriately assessed Plaintiff's statements." Def.'s Br. at 11. Defendant argues that the ALJ properly concluded that Plaintiff's daily activities, such as dressing, bathing, and grooming herself, as well as cooking, doing laundry, and attending college, were not inconsistent with an ability to work. Dkt. No. 8-2 at 11-12.

While "an ALJ's credibility findings are entitled to deference by a reviewing court," the reasoning behind the ALJ's credibility determination must be stated "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Calvello v. Barnheart, No. 05 Civ. 4254, 2008 WL 4452359, at *12 (citing Tejada v. Apfel, 167 F.3d 770, 775-76 (2d Cir. 1999)); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). In this case, the ALJ found that Plaintiff's credibility "cannot be described as full." Dkt.

16

No. 8-2 at 25. He found "the fact that a coalition of three separate agencies are in a process of sending [Plaintiff] through college" with the goal of making her "employable at a relatively high level" to contradict Plaintiff's testimony regarding her impairments and the accompanying symptoms. Id. He found that despite Plaintiff's physical and mental limitations, she has successfully worked in the past and performed well in school. Id. The ALJ concluded that while Plaintiff complains of depression, the record reflects that "she does best when given appropriate structure . . . the kind of structure which a regular job situation would give her." Id.; see also Dkt. No. 8-2 at 75-79.

These reasons are speculative, conclusory, and lack the specificity that would enable the Court to determine the legitimacy of the ALJ's credibility determination. Moreover, while the ALJ did find that Plaintiff's "medically determinable impairments could reasonably be expected to cause perhaps some of the alleged symptoms," he held that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC] assessment." Dkt. No. 8-2 at 25. As the matter is remanded for clarification of the RFC determination, and the ALJ had questioned Plaintiff's credibility because her statements were inconsistent with the RFC determination, Plaintiff's credibility should also be reassessed on remand.

V. **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED** in part and **REMANDED** for clarification of the ALJ's RFC determination and reassessment of Plaintiff's credibility; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED: June 26, 2013
Albany, New York

Lawrence E. Kahn
U.S. District Judge